UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASEY F. HOFFMANN,<br><br>    Plaintiff,<br><br>  v.<br><br>KEVIN JONES,<br><br>    Defendant. | No. 2:15-cv-1748-MCE-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. His complaint concerns events that occurred while he was a pretrial detainee at the Lassen County Jail.

Defendant has filed a motion for summary judgment. ECF No. 40. For the reasons that follow, the motion must be granted.

**I.**    **Background**

This action involves a jail policy requiring inmates to obtain permission before corresponding with other Jail inmates. Plaintiff alleges that defendant Jones, the Captain of the Lassen County Jail ("the Jail"), violated his First Amendment rights when he refused to allow plaintiff, an inmate at the Jail, to correspond with Casey Simoni, who was also incarcerated at the Jail. ECF No. 1. Plaintiff alleges that he had a son with Simoni, that county protective services had taken the child, and that plaintiff wanted to write to Simoni to "maintain family ties as well as

1

knowing how my son is doing, health, needs, pictures." *Id.* at 3. An exhibit attached to the complaint shows that plaintiff filed an "inmate request form" on July 6, 2015 asking to communicate with Simoni. *Id.* at 5. Jail staff responded, "Please coordinate through CFS [Child and Family Services]." *Id.* Plaintiff alleges that this response violates his First Amendment right of freedom of speech.[1] *Id.* at 3. He seeks an injunction ordering defendant to allow such correspondence and monetary damages. *Id.*

## II. The Parties' Factual Contentions and Evidence

The parties do not dispute most of the facts underlying this case. Instead, the dispute centers on whether those facts give rise to a viable First Amendment claim. Where a genuine dispute exists about a fact, the court will so note.[2]

Plaintiff was incarcerated at the Jail for most of 2015. ECF No. 41-1, Def.'s Statement of Undisputed Facts ISO Mot. for Summ. J. (hereinafter "DUF"), Fact No. 1. In May of 2015, Casey Simoni, the mother of plaintiff's infant son, was also booked into the Jail. DUF Nos. 2-4. Defendant was the Custody Commander of the Jail. ECF No. 42, Decl. of Kevin Jones, at ¶ 2. At that time, the Jail enforced a policy requiring inmates to obtain permission before corresponding with other Jail inmates. ECF No. 42 at ¶ 5. Plaintiff asked for permission to write to Simoni "in order to facilitate family ties, and create a parenting program." DUF No. 5; ECF No. 46 at 86.

---

[1] In his opposition to defendant's motion for summary judgment, plaintiff argues that defendant additionally violated his First Amendment rights by retaliating against him for using the grievance system by threatening to take away his good-time credits if he continued to file grievances. Plaintiff did not raise a retaliation claim in his complaint; instead he mentioned the issue only as an excuse for failing to exhaust his administrative remedies. *Compare* ECF No. 1 at 2 (plaintiff's response to the form question asking why he did not present his claim through the grievance process) *with* ECF No. 1 at 3 (plaintiff's statement of his claim). Thus, the court did not recognize such a claim in its order screening plaintiff's complaint under 28 U.S.C. § 1915A. ECF No. 7. That order permitted plaintiff to file an amended complaint (in which he could have asserted the retaliation claim); he elected not to. As plaintiff failed to put the court and defendant on notice that he wished to pursue a retaliation claim against defendant, the court cannot permit plaintiff to insert the claim into the case at this late date, when discovery has closed. ECF Nos. 16, 34; *McKinney v. Am. Airlines, Inc.*, 641 F. Supp. 2d 962, 981-82 (C.D. Cal. 2009) (claim not asserted in complaint or prior to the close of discovery could not be added in summary judgment opposition).

[2] Plaintiff raises some "objection" to every fact put forth by defendant, but these objections do not generally challenge the veracity of the proffered facts.

2

Simoni told Jail staff that she did not want to communicate with plaintiff, except through Child and Family Services. DUF No. 6; ECF No. 42-1, Simoni Dep., at 48-49; ECF No. 46 at 88. She did so because plaintiff "had made hurtful statements about my case and made accusations towards me, that co-parenting was no longer going to be an idea. He made very clear if, in fact, he was able to get full custody of my son, that would be it and he would be taking my son to Montana and I would not see him anymore."[3] ECF No. 42-1 at 46.

Defendant denied plaintiff permission to write to Simoni, "mainly because Simoni did not want to correspond with Plaintiff." DUF No. 8; ECF No. 42 at ¶ 12. However, Jones offered plaintiff the alternative of communicating with Simoni regarding their son through the social workers at Child and Family Services.[4] ECF No. 42 at ¶ 12. Plaintiff did not do so because, he says, that would have acknowledged "that [using that alternative] was preserving his freedom of speech right which it was not." ECF No. 46 at 65. As plaintiff explains it, "communicating by way of [a] third party is not the retention of plaintiff's first amendment rights; freedom of expression dose [sic] not say freedom of expression by way of third party, nor dose [sic] free speech say out of someone else's mouth." ECF No. 46 at 32-33. Plaintiff also asserts that he did not use the alternative offered by Jones because he was worried that Simoni might confide something in the communication that, if revealed to Child and Family Services, would hurt her court case (which related to her treatment of their son). ECF No. 46 at 65.

### III. The Motion for Summary Judgment

#### A. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary

---

[3] Plaintiff disputes defendant's characterization of these facts as "threatening" to Simoni. ECF No. 46 at 19, 32. This characterization is not material; the court will assume that plaintiff was not threatening Simoni.

[4] According to plaintiff, defendant did not arrange this alternative channel of communication; he and Simoni did. ECF No. 46 at 16, 65. Who arranged the alternative means of communication is irrelevant to the following analysis; what matters is whether an alternative means existed. Plaintiff does not dispute that he could have communicated with Simoni through Child and Family Services. *See id.*

3

judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

1    The court does not determine witness credibility. It believes the opposing party's
2    evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255;
3    *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the
4    proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l
5    Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing
6    *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary
7    judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On
8    the other hand, the opposing party "must do more than simply show that there is some
9    metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead
10   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
11   *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary
12   judgment.

13   Concurrent with the motion for summary judgment, defendant advised plaintiff of the
14   requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.
15   ECF No. 41; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952,
16   957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849
17   F.2d 409 (9th Cir. 1988).

**B. Defendant's Motion for Summary Judgment**

### 1. <u>The Jail's Inmate-to-Inmate Correspondence Policy</u>

Defendant argues that his refusal to allow plaintiff to write to Simoni was a legitimate and lawful restriction on plaintiff's speech while incarcerated at the jail. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners retain those First Amendment rights that do not conflict with their status as prison inmates or with the legitimate penological objectives of the prison. *Id.* One such right is the right to send and receive mail, subject to reasonable restrictions. *See Turner v. Safley*, 482 U.S. 78 (1987). A restriction on mail sent from one inmate to another is valid, even if it impinges on

/////

inmates' constitutional rights, if it is reasonably related to legitimate penological interests.[5] *Id.* at 89.

In *Turner v. Safley*, the U.S. Supreme Court provided four factors for courts to consider in analyzing whether a prison restriction is reasonably related to legitimate penological interests. *Id.* at 89-91. First, the court must decide whether there is a valid, rational connection between the restriction and the interest put forth to justify it. *Id.* at 89. The logical connection between the restriction and interest must not be so remote as to render the restriction arbitrary or irrational. *Id.* at 89-90. In addition, the interest must be legitimate and neutral; i.e., operating neutrally without regard to the content of the expression it limits. *Id.*

Second, the court must consider whether there remain alternative avenues through which the prisoner can exercise the right. *Id.* at 90. If so, the court should be more deferential to the judgment of the correctional authorities. *Id.*

Third, the court considers the impact of accommodating the right "on guards and other inmates, and on the allocation of prison resources generally." *Id.* "When accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

Last, the court considers whether there are ready alternatives to the restriction. *Id.* "[T]he absence of ready alternatives is evidence of the reasonableness of a regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* (internal quotation marks and citations omitted). Prison officials do not have to prove that there is no less restrictive alternative. *Id.* "But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

---

[5] This standard applies to pre-trial detainees, such as plaintiff, as well as convicted prisoners. *Bull v. City of San Francisco*, 595 F.3d 964, 973-74 & n.10 (9th Cir. 2010). However, in analyzing whether a restriction on a detainee's rights is reasonable, penological interests in punishment and rehabilitation may not be legitimate. *Id.* n.10. However, interests in safety and security are just as legitimate in pre-trial detention as they are in prison. *Id.*

The Court applied these factors to uphold a regulation that prohibited correspondence between inmates in different Missouri correctional facilities. *Id.* at 91-93. It found a logical connection between the regulation and institutional security concerns. *Id.* at 91. Officials had testified at trial that mail between institutions could be used to communicate escape plans and to arrange violent acts. *Id.* Witnesses stated that the state prisons had a growing prison gang problem and that restricting communication between gang members was an important tool to combat the problem. *Id.* Disallowing inmate-to-inmate correspondence was a logical response to these security issues. *Id.* at 91-92. Notably, the Court did not require evidence showing that the regulation actually effectively addressed these security concerns.

The Court also found that the regulation did not deprive prisoners of all means of expression; it barred only their ability to communicate with a limited class of individuals with whom corrections officials had particular cause to be concerned – other inmates. *Id.* at 92.

Prison officials had testified that, in their expert opinions, correspondence between inmates facilitated the development of informal organizations that threatened the core functions of prison administration – maintaining safety and security. *Id.* To allow the correspondence would come at the cost of significantly less liberty and safety for everyone else. *Id.* Because of this "ripple effect," the third factor weighed in favor of the restriction on inmate-to-inmate correspondence. *Id.* at 92-93. The Court did not require evidence of actually dangerous inmate-to-inmate correspondence. Instead, it deferred to the expert opinion of prison administrators.

Lastly, there were no easy alternatives to the correspondence ban. *Id.* at 93. Plaintiffs had suggested monitoring the mail as an alternative, but prison officials testified that it would be impossible to read every piece of inmate-to-inmate mail and thus they could miss some dangerous correspondence. *Id.* Prisoners could write in jargon or codes, increasing the risk that dangerous messages could not be screened out. *Id.* In addition, monitoring each piece of inmate-to-inmate correspondence would burden staff. *Id.* Accordingly, the final factor also weighed in favor of the restriction. *Id.* Again, the Court accepted the testimony of jail administrators without requiring evidence of specific dangerous mail or evidence that the restriction would effectively address the problem of dangerous messages.

Defendant argues that the undisputed evidence shows that the *Turner* factors weigh in favor of the jail's prohibition on inmate-to-inmate correspondence.

Defendant Jones declares that he has been in law enforcement for over 26 years and was the Custody Commander of the Jail from June 2014 to October 2016, when he became its Operations Commander. ECF No. 42 (Jones Decl.), ¶ 2. The Jail houses inmates who have been arrested and are awaiting arraignment, those awaiting trial, and those who have been sentenced. *Id.* ¶ 4. It is Jail policy to allow inmates to correspond with persons outside the Jail with few restrictions but to require inmates to obtain permission before they may correspond with fellow inmates. *Id.* ¶ 5.

This restriction promotes the following interests, according to defendant:

1. Preventing the movement of contraband or dangerous items from inmate to inmate;
2. Preventing conspiracy and unrest among the inmate population;
3. Preventing inmates from issuing threats or intimidating others;
4. Promoting the efficient operation of the Jail; and
5. Preventing correspondence between co-conspirators or criminal associates.

*Id.* ¶ 6. These interests all relate to the safety and security of inmates and staff. *Id.* At the time plaintiff requested to correspond with Simoni, Jail staff were experiencing several safety and security threats. For example, Jail staff had found contraband (a tattoo gun, sharp objects, drugs, tobacco, and inmate-created weapons) and found messages with coded meanings (like an inmate-created mural containing gang language and code legends located in the Jail). Additionally, the Jail lacked staff who were formally trained to identify and interpret gang language. *Id.* ¶¶ 7-10.

As defendant argues, these are legitimate penological interests. Indeed, the *Turner* Court specifically recognized these interests as legitimate. 482 U.S. at 91-92. The Court further recognized that a ban on inmate-to-inmate correspondence was logically connected to such interests. *Id.* Plaintiff argues that defendant must provide factual support for his proffered interests rather than simply "pile conjecture upon conjecture." ECF No. 46 at 23-24. However, the *Turner* Court accepted the testimony of jail administrators about why they had restricted inmate-to-inmate communication. The Court did not require further factual support beyond that

testimony, and instead counseled that "courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner*, 482 U.S. at 91 (internal quotation marks omitted); *see also Hernandez v. Wheeler*, No. 2:10-cv-00084-CWD, 2013 U.S. Dist. LEXIS 4698, at *17-18 (D. Id. Jan. 10, 2013) (finding that the first *Turner* factor weighed in favor of a restriction on inmate-to-inmate correspondence in a jail and noting that "[t]he dissenting justices in *Turner* argued that these interests [safety and security] were mere generalities, and that more fact-specific interest should have been supplied by prison officials, but the majority rejected that position in favor of deference to prison authorities."). Applying that standard to the expert testimony presented here, the first factor weighs in favor of finding the restriction lawful.

Defendant notes that plaintiff was allowed the alternative of communicating with Simoni through Child and Family Services. Plaintiff disputes that this was a good alternative, because it was possible that something they said would be used against Simoni in her court case. However, the Court in *Turner* found that a total ban on inmate-to-inmate correspondence was lawful even where there was no alternative channel for inmate-to-inmate communication. *See* 482 U.S. at 92. The Court was satisfied that the ban did not prevent *all* communication by inmates, because it limited only their correspondence with other inmates. *Id.* Here, while plaintiff's interest in communicating with Simoni about their son was certainly significant, plaintiff could have communicated with her through Child and Family Services, which was Simoni's wish. *See Hernandez*, 2013 U.S. Dist. LEXIS 4698, at *16 n.3 (noting that, while married couples' interest in communicating might outweigh institutional security concerns, cases have not found the same regarding unmarried couples). While this alternative channel may not have been perfect in plaintiff's eyes, it was more than was provided to the inmates in *Turner*. Thus, the second factor also weighs in favor of finding the restriction lawful.

Defendant argues that the restriction (with the alternative channel through Child and Family Services) struck the appropriate balance between plaintiff's free speech rights and the interests of the Jail in promoting security and preserving staff resources and Simoni's interest in not having direct communication with plaintiff. Plaintiff argues that staff could have screened

10

inmate-to-inmate mail, as they screened other incoming mail. However, defendant declares that, at the time in question, the Jail lacked staff trained in gang communication. Thus, to serve the Jail's legitimate interest in curbing gang communication between inmates, the Jail would have had to hire or train staff and then pay for staff time spent screening the additional mail. As the *Turner* Court recognized, the possibility of missing dangerous encoded messages and the burden on staff resources of screening rather than banning inmate-to-inmate correspondence presents more than a de minimis cost. Additionally, in this case, allowing the communication would have adversely affected Simoni, who did not want to correspond with plaintiff. It was reasonable for defendant to restrict a communication that could potentially cause conflict between two inmates. Accordingly, the third *Turner* factor also weighs in favor of finding the restriction lawful.

Lastly, defendant argues that the restriction was not an exaggerated response to the Jail's legitimate interests in promoting safety and security and conserving staff resources. In 2015, the Jail had an ongoing problem with contraband and hidden messages, and defendant argues that requiring inmates to obtain permission before communicating with other inmates was reasonable. Plaintiff argues that the ban was an exaggerated response, because the Jail could have instead screened the correspondence or allowed for visits between inmates. ECF No. 46 at 25. The Jail was not required to implement the least restrictive rule, however. *Turner*, 482 U.S. at 90-91. Plaintiff has not pointed to an alternative that would have fully accommodated his expressive rights at de minimis cost to defendant's valid penological interests, as noted above. *See Hernandez*, 2013 U.S. Dist. LEXIS 4698, at *22-23 (noting several possible alternatives to a ban on inmate-to-inmate correspondence that would have allowed a husband and wife to communicate but concluding that the court must defer to jail officials on whether such alternatives would pose undue security risks or require excessive monitoring by jail staff). Accordingly, the final factor also weights in favor of the restriction.

Considering the evidence provided by the parties in the light most favorable to plaintiff, all four factors identified in *Turner* weigh in favor of the Jail's requirement that inmates obtain permission to correspond with other inmates (and defendant's denial of such permission to

/////

1  plaintiff in response to his request to write to Simoni). Summary judgment is therefore

2  appropriate in favor of defendant.

### 2. **Qualified Immunity**

Alternatively, summary judgment is appropriate in favor of defendant on the basis of qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court considers: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may consider either prong of the analysis first. *Id.* at 236.

Even if the court were to presume that plaintiff had a right to communicate with Simoni, the court cannot conclude that such a right was clearly established in 2015, when defendant denied plaintiff permission to write to Simoni. In analyzing whether the law was clearly established, the court must look at the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the defendant can show that he did not know, nor should he have known, the relevant legal standard, then qualified immunity applies. *Harlow*, 457 U.S. at 819. Defendant argues that, given the *Turner* decision, which upheld restrictions on inmate-to-inmate correspondence, and California regulations, which similarly require state prison inmates to obtain permission before they may correspond (Cal. Code Regs. tit. 15, § 3139), Jones did not know, nor should he have known, that it violated plaintiff's rights to deny him permission to correspond with Simoni. The court agrees. Plaintiff has not identified any U.S. Supreme Court or Ninth Circuit case clearly establishing the rights of inmates to correspond with one another, even when those inmates have a common concern, such as child custody. *See Hernandez*, 2013 U.S. Dist.

---

[6] Plaintiff refers to municipal liability and cites *Owen v. Independence*, 445 U.S. 622 (1980), in which the Court held that municipal corporations could not claim qualified immunity. This reference is inapt; plaintiff is not suing any municipal corporation in this action.

12

LEXIS 4698, at *26-29 and cases cited therein.  Rather, cases have upheld restrictions on inmate-to-inmate correspondence.  *E.g.*, *Turner*, 482 U.S. 78; *Hernandez*, 2013 U.S. Dist. LEXIS 4698; *Maldonado v. Det. Officer Corporal*, No. CV-07-127-BLG-RFC, 2008 U.S. Dist. LEXIS 55044 (D. Mont. July 16, 2008).  Accordingly, defendant should be granted qualified immunity and summary judgment.

### 3. **Damages**

Lastly, defendant argues that plaintiff cannot support his claim for damages.  The court need not consider this argument, because it has concluded that summary judgment must be granted to defendant for the reasons stated above.

## IV. Conclusion and Recommendation

For the reasons set forth above, it is hereby RECOMMENDED that:

1. Defendant's January 26, 2018 motion for summary judgment (ECF No. 40) be GRANTED; and
2. The Clerk be directed to enter judgment accordingly and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 10, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE